This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39552**

**FLORENCE SCHRIEK, MATT OLGUIN,
STACY OLGUIN, and MICHAEL FULLER,**

      Plaintiffs-Appellants,

v.

**DAVID MCWILLIAMS; LARRY LASATER;
L & K CONSTRUCTION COMPANY, LLC;
TRIPLE EAGLE CONSTRUCTION, INC.;
MED CONCRETE, INC.; ECONOMIC
COUNCIL HELPING OTHERS (ECHO),
INC.; DON FALLON CIVIL ENGINEER, LLC;
JOHN DOES 1 THROUGH 10; and DOE
CORPORATIONS 1 THROUGH 10,**

      Defendants-Appellees.

consolidated with

**GARRETT STAGG and MICHELE STAGG,**

      Plaintiffs-Appellants,

v.

**DAVID MCWILLIAMS; TRIPLE EAGLE
CONSTRUCTION, INC.; MED CONCRETE,
INC.; ECONOMIC COUNCIL HELPING
OTHERS (ECHO), INC.; JOHN DOES 1
THROUGH 10; and DOE CORPORATIONS
1 THROUGH 10,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Court Judge**

Jennings Haug Keleher McLeod LLP
Chris R. Marquez
Albuquerque, NM

for Appellants

Lorber, Greenfield & Polito, LLP
Louis W. Horowitz
Linn E. Gillen
Albuquerque, NM

for Appellee David McWilliams

Risley Law Firm, P.C.
Gary Risley
Farmington, NM

for Appellees Larry Lasater and L & K Construction Company, LLC

Evans & Company
Robert C. EvansDurango, CO
JoHanna C. Cox
Farmington, NM

for Appellee Economic Council Helping Others, Inc.

## MEMORANDUM OPINION

**MEDINA, Judge.**

{1}     This appeal requires us to unravel a complex tangle of parties and claims related to a dispute over a collapsed retention wall. Plaintiffs Florence Schriek, Matt and Stacy Olguin, Michael Fuller, and Garrett and Michele Stagg appeal the district court's grants of summary judgment for Defendants David McWilliams; Economic Council Helping Others, Inc. (ECHO); and L&K Construction Company, LLC and Larry Lasater (together, the Lasater Defendants). We address the appeals against each Defendant individually for the sake of clarity. Within each section devoted to the individual Defendants, we parse out the appeal brought by Plaintiff Fuller because of the underlying facts unique to his claims.

{2}     All Plaintiffs asserted claims of breach of contract, breach of implied warranty, and negligence against all Defendants for the collapse of the retaining wall system separating their properties. Plaintiffs Schriek, Olguin, and Fuller also asserted claims of

breach of implied warranty and negligence against the Lasater Defendants for construction of a subsurface French drain on Plaintiff Fuller's property.

**{3}** Plaintiffs argue the district court erred in granting the summary judgments because there is a genuine issue of material fact about when Plaintiffs began to use the retaining wall system on their property and Defendants failed to show Plaintiffs knew or reasonably should have known that the retaining wall system contained a latent construction defect. Plaintiffs Schriek, Olguin, and Fuller also appeal the denial of their motions for reconsideration on the grants of summary judgment for the same reasons they assert summary judgment was improper. We affirm in part and reverse in part.

**{4}** In June 2006, Plaintiff Schriek, Sherri Watson, the predecessor in interest to the Olguin Plaintiffs' home, and Defendant Lasater each owned a lot in a developing subdivision in Aztec, New Mexico. The Schriek and now Olguin lots were adjacent to each other. The Lasater lot was adjacent to the Stagg lot, and the Stagg Plaintiffs obtained their lot in June 2006. The Lasater and Stagg lots were located directly behind and uphill from the Schriek and Olguin lots, and were adjacent to each other.

**{5}** In July 2006, Plaintiff Schriek and others who are not parties to this action entered into a building group membership and labor agreement with Defendant ECHO to build homes in the subdivision in a community based house building agreement. Under the agreement, Defendant ECHO agreed, in part, to provide "technical assistance and management services for building group members under the mutual [s]elf-[h]elp [h]ousing [p]rogram" and would act as a "[r]ural [d]evelopment grant manager and technical advisor" but not as a general contractor. Defendant ECHO also agreed, among other things, to locate and obtain control of suitable building sites; prepare loan applications; provide house plans; direct, control, and implement construction on all of the members' houses; and select contractors and suppliers. In turn, building group members agreed, in part, to "work on any house in their group, and at any job, assigned by the [c]onstruction [s]upervisor" and to act as their own general contractors. Finally, building group members agreed, in part "not to move into the house that will become theirs, or move personal property into that house, until all the homes in the group are finalized by [USDA] Rural Development and [Defendant ECHO]."

**{6}** In November 2006, Plaintiff Schriek and others paid Med Concrete, Inc.[1] $3,000 each to construct a retaining wall system between the properties at issue on appeal. Defendant Lasater also contributed to the cost of building the retaining wall between his and Plaintiff Schriek's lots. The retaining wall system consisted of an upper and lower retaining wall that ran along the back property line of the lots now owned by Plaintiffs Schriek, Olguin, Fuller, and Stagg. Defendant McWilliams dug the footing trench for the lower wall's construction. The Lasater Defendants were not involved in the construction of the retaining wall other than to contribute to the overall cost of the wall.

---

[1]Med Concrete, Inc., though originally sued by all Plaintiffs, was ultimately dismissed from the lawsuit prior to this appeal, and thus are not party to this appeal.

**{7}** In 2006 or 2007, Defendant Lasater sold the home he built to Plaintiff Fuller. In March 2007, certificates of occupancy were issued for Plaintiff Schriek's home and the Olguin Plaintiffs' home. The Olguin Plaintiffs purchased their home prior to the wall collapse in 2017. The Stagg Plaintiffs also purchased their home prior to the wall collapse in 2017, though the record is silent as to when they purchased the home and whether or not they also participated in Defendant ECHO's building agreement.

**{8}** In 2008, Plaintiff Fuller reported experiencing "numerous problems with the retaining wall and garden wall on [his] rear property line" and, through counsel, sent a demand letter to Defendant Lasater to address his concerns. In June 2009, Defendant Lasater installed or hired someone to install a subsurface French drain on Plaintiff Fuller's property. Plaintiff Fuller later removed his garden wall, located above the retaining wall system, due to ongoing issues with the retaining wall on his property.

**{9}** In January 2017, the retaining wall system collapsed, causing damage to all four properties. In March 2017, Plaintiffs Schriek and Olguin filed a joint complaint against Defendants McWilliams and ECHO—as well as several other defendants who are not parties to this appeal—asserting that the retaining wall failed "because it was negligently engineered and/or constructed." These Plaintiffs raised three claims against the Defendants: breach of contract, breach of implied warranty, and negligence.

**{10}** The Stagg Plaintiffs filed a separate complaint in March 2017, which was later consolidated with Plaintiffs Schriek and Olguin's case. In November 2017, Plaintiff Fuller joined Plaintiffs Schriek and Olguin, and together they filed an amended complaint on the same grounds as their first complaint and added additional claims against the Lasater Defendants for breach of implied warranty and negligence related to the installation of the French drain.

**{11}** Defendants each moved for summary judgment on Plaintiffs' claims, arguing in part that all claims were prohibited by the ten year statute of repose, NMSA 1978, Section 37-1-27 (1967), or, alternatively, were barred by the six year statute of limitations for written contracts, NMSA 1978, Section 37-1-3 (2015), and the four year statute of limitations for unwritten contracts and injuries to property, pursuant to NMSA 1978, Section 37-1-4 (1880). Plaintiffs Schriek, Olguin, and Fuller responded that the statute of repose did not apply and that the statute of limitations did not begin to run until the retaining wall system collapsed in 2017 because no Plaintiff was aware of deficiencies in the lower retaining wall. In Plaintiffs Schriek, Olguin, and Fuller's response to Defendant McWilliams and the Lasater Defendants, Plaintiffs additionally cited to and invoked the discovery rule, NMSA 1978, Section 37-1-7 (1880). The Stagg Plaintiffs filed a response incorporating the same augments as Plaintiffs Schriek, Olguin, and Fuller.

**{12}** After a hearing on the motions, the district court granted each motion. The district court found, in part, that the statute of repose barred Plaintiffs' claims against Defendant McWilliams because the retaining wall had been in use since November 2006, more than ten years prior to when Plaintiffs filed their suits. The district court found that the

statutes of limitations barred Plaintiffs' claims against Defendant ECHO under Section 37-1-3 and Section 37-1-4. Finally, the district court granted the summary judgment motion for the Lasater Defendants because Section 37-1-3 and Section 37-1-4 applied, and that the claims related to the French drain were barred by the discovery rule in Section 37-1-7. Plaintiffs Schriek, Olguin, and Fuller filed motions to reconsider, which the district court denied. This appeal followed.

**DISCUSSION**2

**{13}**    We begin our review with the district court's grants of summary judgment on all claims. We first briefly discuss the application of the discovery rule to Plaintiffs' breach of contract and breach of implied warranty claims, and determine its applicability to the claims at issue on appeal. We then turn to the claims themselves. Though the issues on appeal stem from the same underlying facts and the parties make substantially similar arguments for each claim, we separate our analysis by each Defendant for clarity. We first affirm the district court's grant of summary judgment for Defendant McWilliams, holding that the statute of repose barred all claims. Then, we affirm the district court's grant of summary judgment for Defendant ECHO on Plaintiff Fuller's breach of contract, breach of implied warranty, and negligence claims under the applicable statutes of limitations. We reverse the district court's grant of summary judgment on Plaintiffs Schriek, Olguin, and Stagg's breach of contract, breach of implied warranty, and negligence claims against Defendant ECHO. We next affirm the district court's grant of summary judgment for the Lasater Defendants on Plaintiff Fuller's breach of contract, breach of implied warranties, and negligence claims. Finally, we reverse the district court's grant of summary judgment on Plaintiffs Schriek and Olguin's breach of contract, breach of implied warranties, and negligence claims against the Lasater Defendants.

**{14}**    After review of the district court's grants of summary judgment, we then turn to our review of the district court's denials of Plaintiffs Schriek, Olguin, and Fuller's motions for reconsideration for the claims we do not reverse the grant of summary judgment. We affirm the district court's denial of the three motions for reconsideration on the remaining claims, holding that the district court did not abuse its discretion.

## I.    SUMMARY JUDGMENT

**{15}**    We review the grant of summary judgment de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. "[S]ummary judgment is a drastic remedial tool which demands the exercise of caution in its application, and we review the record in the light most favorable to support a trial on the merits." *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 7, 145 N.M. 533, 202 P.3d 126 (internal quotation marks and citation omitted). "Summary judgment is proper where no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Carrillo v.*

---

2Defendant McWilliams asks us to deny Plaintiffs' appeal due to untimeliness, pursuant to Rule 12-210(C)(2)(a) NMRA. The March 25, 2022, filing of the audio transcripts started the briefing schedule. Plaintiffs filed their brief in chief on May 9, 2022, in compliance with Rule 12-210(C)(2)(a). Therefore, Plaintiffs timely filed their brief and this Court will reach the merits of Plaintiffs' appeal.

*My Way Holdings, LLC*, 2017-NMCA-024, ¶ 24, 389 P.3d 1087. "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id.*

**{16}** The movant has the initial burden of making a prima facie showing that he is entitled to summary judgment, which constitutes "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Romero*, 2010-NMSC-035, ¶ 10 (internal quotation marks and citation omitted). Once the movant establishes this prima facie case for summary judgment, "the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Kreutzer v. Aldo Leopold High Sch.*, 2018-NMCA-005, ¶ 27, 409 P.3d 930 (internal quotation marks and citation omitted). When attempting to meet this burden, the non-movant cannot rely on allegations or speculation but must present admissible evidence demonstrating the existence of a genuine issue of a material fact. *Id.* "If the non-movant fails to do so, summary judgment, if appropriate, shall be entered against him." *Id.* (internal quotation marks and citation omitted).

## A. The Discovery Rule Applies to the Breach of Contract and Breach of Implied Warranty Claims

**{17}** Plaintiffs argue that the district court improperly granted summary judgment on the breach of contract and breach of implied warranty claims based on the statutes of limitations in Section 37-1-3 and Section 37-1-4. Plaintiffs argue that the district court erred because it did not apply the discovery rule in Section 37-1-7 to these claims and there were disputed questions of material fact as to when Plaintiffs became aware of defects in the retaining wall. Although this Court has not addressed whether the discovery rule applies to breach of contract and breach of implied warranty claims based on latent construction defects, Plaintiffs ask that we do so here by extending the discovery rule to their contract-based claims.

**{18}** "[T]he statute of limitations defense is generally an affirmative defense." *Yurcic v. City of Gallup*, 2013-NMCA-039, ¶ 29, 298 P.3d 500 (internal quotation marks and citation omitted). "When asserting an affirmative defense as grounds for summary judgment, the defendant carries the burden of making a prima facie showing as to each element of the definition of the defense." *Id.* (text only) (internal citation omitted). "Prima facie case is defined as a party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Id.* (text only) (internal citation omitted).

**{19}** The issue on appeal is when the statutes of limitations began to run. Under our discovery rule, "in actions for injuries to, or conversion of property, the cause of action

shall not be deemed to have accrued until the . . . injury or conversion complained of, shall have been discovered by the party aggrieved." Section 37-1-7. "For purposes of determining when the cause of action accrues, discovery is defined as the discovery of such facts as would, on reasonable diligent investigation, lead to knowledge of the fraud or other injury." *Wilde v. Westland Dev. Co., Inc.*, 2010-NMCA-085, ¶ 18, 148 N.M. 627, 241 P.3d 628 (text only) (internal citation omitted).

**{20}** The "application of the discovery rule [is] a jury question, particularly when conflicting inferences may be drawn." *Williams v. Stewart,* 2005-NMCA-061, ¶ 16, 137 N.M. 420, 112 P.3d 281. But "issues as to whether a claim has been timely filed or whether good cause exists for delay in filing an action" become questions of law "when the facts are undisputed." *Yurcic,* 2013-NMCA-039, ¶ 10 (internal quotation marks and citation omitted). Based on the facts and procedural history of this case, we agree with Plaintiffs that the discovery rules applies to their contract-based claims and explain.

**{21}** Plaintiffs raised the discovery rule in response to Defendants' motions for summary judgment, citing to Section 37-1-7 and arguing that the statutes of limitations did not begin to run until the retaining wall system collapse in 2017. Plaintiffs Schriek and Olguin additionally filed affidavits reiterating that they had no knowledge of problems with the retaining wall until its collapse. Defendants do not argue that the discovery rule should not apply—both before the district court and now on appeal. Rather, Defendants argue that Plaintiffs failed to meet their burden under the discovery rule based on Plaintiff Fuller's affidavit that he was aware of issues with the retaining wall system in 2008, discussed later in the opinion. And the district court did apply the discovery rule when ruling on the Lasater Defendants' motion for summary judgment as to Plaintiffs' claims regarding the French drain. We are unable to determine whether the district court applied the discovery rule to the other claims and found that Plaintiffs did not meet their burden under the discovery rule or whether the district court simply did not consider its application to the other claims. However, there is no question the district court was aware the Plaintiffs raised its application to their claims.

**{22}** We have previously applied the discovery rule to contract claims, although under a different statute of limitations. *See Quarrie v. N.M. Inst. of Mining and Tech.*, 2021-NMCA-044, ¶ 10, 13, 495 P.3d 645 (applying the discovery rule to the plaintiff's complaint, which was a complaint "based on contract" subject to the two-year statute of limitations set forth in NMSA 1978, Section 37-1-23(B) (1976) (internal quotation marks omitted)). We see no distinguishable difference to the discovery rule's application here. *See Yurcic*, 2013-NMCA-039, ¶¶ 2-4, 9-18 (applying the discovery rule to causes of action related to construction defects causing injuries to the plaintiff's property). In the absence of any argument from Defendants that it should not apply, we hold that the discovery rule in Section 37-1-7 also applies to Plaintiffs' contract-based claims.

**{23}** Having resolved our application of the discovery rule to Plaintiffs' contract-based claims, we now turn to Plaintiffs' arguments on appeal. Again, although the issues on appeal stem from the same underlying facts and the parties make substantially similar arguments for each claim, we separate our analysis by each Defendant for clarity.

**B.      Defendant McWilliams**

**{24}**    We begin with Plaintiffs' argument that the district court erred in granting summary judgment for Defendant McWilliams when it held that the statute of repose barred all claims. Plaintiffs contend that the district court improperly resolved an issue of fact by determining the date of substantial completion that triggered the statute of repose. According to Plaintiffs, the district court erroneously found that the retaining wall system, constructed in part by Defendant McWilliams, was in use by all Plaintiffs or their predecessors in interest by November 2006, and disregarded Plaintiffs' evidence that the retaining wall system came into use in March 2007 when certificates of occupancy for their homes were issued.

**{25}**    Plaintiffs' argument requires us to interpret the statute of repose, Section 37-1-27, to determine whether the evidence presented created an issue of fact as to which event triggered the statute. Statutory interpretation is a question of law which we review de novo. *See Tucson Elec. Power Co. v. N.M Tax'n & Revenue Dep't*, 2020-NMCA-011, ¶ 6, 456 P.3d 1085. "In interpreting statutes, we seek to give effect to the Legislature's intent." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 13, 121 N.M. 764, 918 P.2d 350. In determining legislative intent, "we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Diamond v. Diamond*, 2012-NMSC-022, ¶ 25, 283 P.3d 260 (internal quotation marks and citation omitted). "Where the language of a statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation. Finally, the practical implications, as well as the statute's object and purpose are considered." *Damon v. Vista Del Norte Dev., LLC*, 2016-NMCA-083, ¶ 8, 381 P.3d 679 (internal quotation marks and citations omitted).

**{26}**    Section 37-1-27 states:

No action to recover damages for any injury to property, real or personal, or for injury to the person, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of a physical improvement to real property, nor any action for contribution or indemnity for damages so sustained, against any person performing or furnishing the construction or the design, planning, supervision, inspection or administration of construction of such improvement to real property, and on account of such activity, shall be brought after ten years from the date of substantial completion of such improvement; provided this limitation shall not apply to any action based on a contract, warranty or guarantee which contains express terms inconsistent herewith. The date of substantial completion shall mean the date when construction is sufficiently completed so that the owner can occupy or use the improvement for the purpose for which it was intended, or the date on which the owner does so occupy or use the improvement, or the date established by the contractor as the date of substantial completion, whichever date occurs last.

**{27}** The purpose of a statute of repose is "to put an end to prospective liability for wrongful acts that, after the passage of time, have yet to give rise to a justiciable claim." *Damon*, 2016-NMCA-083, ¶ 9 (internal quotation marks and citation omitted). "Unlike a statute of limitations, this statute begins to run from a specific date unrelated to the date of injury and thus may abrogate a cause of action before it accrues." *Little v. Jacobs*, 2014-NMCA-105, ¶ 10, 336 P.3d 398 (text only) (internal citation omitted). "Because an injury could arise years after a construction project was completed, licensed contractors continued to be exposed to liability long after relinquishing control over a project." *Id.* ¶ 11. "The Legislature responded by limiting liability to those in the construction industry to ten years after substantial completion of a project." *Id.* Therefore, the statute of repose reduces a contractor's "exposure to liability by establishing a clear deadline within which an action may be brought." *Id.* ¶ 17.

**{28}** The triggering event for the statue of repose is "the date of substantial completion" of a physical improvement to real property. Section 37-1-27. The statute of repose defines the "date of substantial completion" to mean: (1) "the date when construction is sufficiently completed so that the owner can occupy or use the improvement for the purpose for which it was intended"; (2) "the date on which the owner does so occupy or use the improvement"; or (3) "the date established by the contractor as the date of substantial completion, whichever date occurs last." *Id.*

**{29}** Plaintiffs do not dispute that the retaining wall system is a physical improvement subject to the statute of repose and conceded at the motion hearing that it is separate and apart from the home. Rather, Plaintiffs argue the retaining wall system was not "substantially completed" until occupancy of the homes in 2007, which would allow Plaintiffs to file their lawsuits before the statute of repose barred all claims. Because Plaintiffs offered evidence to dispute the substantial completion date, Plaintiffs argue the district court improperly granted summary judgment.

**{30}** This Court resolved a substantially similar argument in *Damon*. There, the plaintiffs argued that the date of substantial completion arose when the home in question was purchased and occupied, rather than when individual infrastructure improvements to the land became available to "use" for their intended purpose. *Damon*, 2016-NMCA-083, ¶ 14. This Court distinguished the improvement at the heart of the lawsuit (construction of a power line on the property) from the completion of the home, and concluded that the date of occupancy was not relevant to determining the date of substantial completion for other infrastructure improvements. *Id.* ¶ 15.

**{31}** Here, like the defendant in *Damon*, Defendant McWilliams was not involved in the construction of the homes, a separate infrastructure improvement where the date of occupancy would matter. Rather, Defendant McWilliams only assisted in the initial construction of the retaining wall system, completed in November 2006, and not any subsequent construction. And like the plaintiffs in *Damon*, Plaintiffs and their predecessors in interest here were able to "use" the retaining wall system upon the date of its completion. The intended purpose of the retaining wall system was to make the

lots suitable for home construction by protecting the lots from soil erosion before completing construction of the homes.

**{32}** We are unpersuaded by Plaintiffs' attempt to distinguish themselves from the plaintiffs in *Damon* by arguing that they or their predecessors in interest had no control over, or use, of their properties until the certificates of occupancy for their homes were issued. Plaintiffs' argument is based on terms of the building group agreement where parties agreed not to move into the houses until all homes in the group were finalized by Defendant ECHO and not to direct or interfere with subcontractors. Despite this agreement, Plaintiffs and their predecessors in interest exercised control and use of their property by serving as general contractors for the construction of their homes and by participating in the construction of the homes after the retaining wall system was built. Further, Plaintiffs fail to explain how this should effect our analysis of Defendant McWilliams when Defendant McWilliams only assisted in the construction of the retaining wall system and not the homes themselves.

**{33}** Based on the foregoing we hold that November 2006 is the "date of substantial completion" for the retaining wall system under the statute of repose. *See Damon*, 2016-NMCA-083, ¶¶ 13-16. Therefore, under Section 37-1-27, all claims against Defendant McWilliams related to the retaining wall system are barred if filed after November 2016. Because Plaintiffs filed their lawsuits beginning in March 2017, we affirm the district court's grant of summary judgment in favor of Defendant McWilliams as to all claims. Because we affirm the district court on these grounds, we do not address the district court's grant of summary judgment on the alternative applicable statute of limitations, Section 37-1-3 and Section 37-1-4.

**{34}** Having resolved Plaintiffs' appeal of the district court's grant of summary judgment for Defendant McWilliams, we next turn to the district court's grant of summary judgment for Defendant ECHO.

## C.     Defendant ECHO

**{35}** Plaintiffs claim that the district court improperly granted summary judgment in favor of Defendant ECHO based on the statutes of limitations in Section 37-1-3 and Section 37-1-4.3 Plaintiffs argue that there were disputed questions of material fact as to when Plaintiffs became aware of defects in the retaining wall.

**{36}** Plaintiffs' negligence and breach of implied warranty claims against Defendant ECHO are subject to a four year statute of limitations. *See* § 37-1-4 ("[Actions] founded upon … unwritten contracts [and] those brought for injuries to property" are to be

---

3The district court ruled that the statute of repose did not apply to Defendant ECHO because Defendant ECHO is not a licensed contractor. *See Little v. Jacobs*, 2014-NMCA-105, ¶ 21, 336 P.3d 398 ("We hold that Section 37-1-27 does not permit unlicensed contractors to invoke its protections."). We decline to address Defendant ECHO's statute of repose argument because Defendant ECHO did not challenge this ruling in a cross appeal. *See McAneny v. Catechis*, 2023-NMCA-055, ¶ 8, 534 P.3d 1007 (declining to address arguments raised by appellees absent a cross-appeal).

brought "within four years"). Plaintiffs' contract claims against ECHO are subject to the six year statute of limitations. *See* § 37-1-3 ("Actions founded upon… contract[s] in writing shall be brought within six years.").

### i.     Plaintiff Fuller's Claims

**{37}**     We begin with Plaintiff Fuller's claims against Defendant ECHO. We address these claims separately because there are facts at issue unique to Plaintiff Fuller. Specifically, Plaintiff Fuller argues that the district court erred in granting summary judgment against him because there is a genuine issue of material fact over when he discovered defects in the retaining wall system. Plaintiffs Schriek and Olguin's response to Defendants' motions for summary judgment included an affidavit from Plaintiff Fuller stating that he became aware of issues with the retaining wall in 2008 and made attempts at remedial measures due to instability in the walls. After Plaintiff Fuller joined the lawsuit, he submitted a second affidavit stating that he was not aware of any problems with the lower retaining wall prior to its collapse in 2017 and that the issues discussed in the first affidavit were in reference to a garden wall located on his property and against the upper retaining wall. Because the district court did not find that the second affidavit was a sham, Plaintiffs argue the district court improperly weighed credibility on summary judgment. We disagree and explain.

**{38}**     "[W]here a factual conflict exists in plaintiffs' testimony, summary judgment is improper because we do not weigh the evidence." *Rivera v. Trujillo*, 1999-NMCA-129, ¶ 8, 128 N.M. 106, 990 P.2d 219 (internal quotation marks and citation omitted). But "the determination of whether a genuine factual dispute exists is a question of law." *Id.* In New Mexico, "a nonmovant will not be allowed to defeat summary judgment by attempting to create a sham issue of fact." *Id.* ¶ 9.

**{39}**     Plaintiff Fuller's first affidavit states "[i]n November 2008, after experiencing numerous problems with the retaining wall and garden wall which rest upon my rear property line, I engaged an attorney to send a demand letter to [Defendant] Lasater regarding the instability of the walls." Further, in "June 2009, in an apparent attempt to remedy the problem" Defendant L&K Construction Company installed the French drain system. However, these "efforts to stabilize the wall were unsuccessful and I was forced to remove the garden wall out of fear that it would fall and cause substantial personal injury or property damage."

**{40}**     There are similar statements from Plaintiff Fuller in the Plaintiffs' expert report submitted in response to Defendants' motions for summary judgment. The expert report states that "[a]ccording to [Plaintiff] Fuller cracks began to appear on November 24, 2008" in the retaining wall on his property. Further, Plaintiff Fuller "indicated that a pallet had been found beneath the wall" and that he "eventually removed the upper yard wall and added a wooden fence with posts that were encased in concrete in the ground." Finally, Plaintiff Fuller "installed the wooden yard fence in [two] stages with completion in 2016."

**{41}** Plaintiff Fuller's second affidavit states "[m]y statement [in the first affidavit] referenced the garden wall which rested upon the upper retaining wall, not the lower retaining wall." Plaintiff Fuller also stated that "[p]rior to the collapse of the lower retaining wall, I was not aware of any defect or problems with that wall."

**{42}** We conclude that Plaintiff Fuller's second affidavit fails to create a genuine issue of material fact as to when Plaintiff Fuller was aware there were issues with the retaining wall system when reading the two affidavits in concert. While the second affidavit emphasizes Plaintiff Fuller's garden wall addition to the retaining wall system, it does not contradict Plaintiff Fuller's admissions from his first affidavit and other statements included in Plaintiffs' expert report that Plaintiff Fuller became aware that there were issues in the retaining wall system that extended beyond his garden wall in 2008. Such "unambiguous admissions under oath will not create a factual dispute sufficient to evade summary judgment." *Rivera*, 1999-NMCA-129, ¶ 12.

**{43}** Ultimately, Defendant ECHO made a prima facie case that Plaintiff Fuller was aware of problems with the retaining wall system in November 2008 by citing his own affidavit. Once Defendants made a prima facie showing that the claim was time barred, "a plaintiff attempting to invoke the discovery rule, has the burden of demonstrating that if he or she had diligently investigated the problem he or she would have been unable to discover the facts underlying the claim." *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶ 28, 140 N.M. 111, 140 P.3d 532 (text only) (internal citation omitted). Thus, it was Plaintiff Fuller's burden to demonstrate that if he had diligently investigated the problem, he would have been unable to discover the facts underlying his claims. Plaintiff Fuller failed to do so and did not create a genuine issue of material fact sufficient to demonstrate that he was unable to reasonably have discovered his cause of actions within the statutes of limitations periods. Therefore, we affirm the district court's grant of summary judgement for Defendant ECHO on Plaintiff Fuller's claims.

### ii.    Plaintiffs Schriek, Olguin, and Stagg's Claims

**{44}** Plaintiffs Schriek, Olguin, and Stagg argue that the district court erred in granting summary judgment based on the statutes of limitations because no facts establish that they were aware of the retaining wall system's condition prior to its January 2017 collapse. 4 Therefore, Defendant ECHO failed to establish a prima facie showing it was entitled to summary judgment. We agree and explain.

---

4The Stagg Plaintiffs did not file a response to Defendant ECHO's motion for summary judgment. When opposing a motion for summary judgment, "[a]ll material facts set forth in the statement of the moving party shall be deemed admitted unless specifically controverted." Rule 1-056(D)(2) NMRA. When an opposing party fails to respond to a motion for summary judgment, "the district court must assess despite the lack of response whether, on the merits, the moving party satisfied the burden under Rule 1-056(C)." *Atherton v. Gopin*, 2015-NMCA-003, ¶ 24, 340 P.3d 630 (text only) (internal citation omitted). Because the Stagg Plaintiffs failed to file a response, they failed to preserve for our review any of their arguments on appeal. *See* Rule 12-321(A) NMRA; *see also Day-Peck v. Little*, 2021-NMCA-034, ¶ 30, 493 P.3d 477 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)). However, we still review the granting of summary judgment de novo, and thus must

**{45}** Once Plaintiffs invoked the discovery rule in response to Defendant ECHO's statutes of limitations defenses, which included affidavits asserting they were not aware of any defect or other issue with the retaining wall until its 2017 collapse, the burden shifted to Defendant ECHO to produce sufficient evidence showing that Plaintiffs Schriek, Olguin, and Stagg each acquired knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery that there were structural or other problems with the retaining wall system prior to its collapse in 2017. *See Yurcic*, 2013-NMCA-039, ¶¶ 9, 29. However, Defendant ECHO failed to produce evidence specific to these Plaintiffs. Rather, Defendant ECHO argues that Plaintiffs were on notice of issues with the wall in 2008, "as demonstrated by [Plaintiff] Fuller's affidavits." Defendant ECHO also argues that "[b]etween 2008 and 2017 [Plaintiffs] made no reasonable, diligent effort to discover or address the issues with the retaining walls" and there is "[d]ocumented lack of effort" by these Plaintiffs to exercise reasonable diligence.

**{46}** However, Defendant ECHO fails to cite to the record where this lack of effort is documented. "It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 (internal quotation marks and citation omitted). Rather, our review of the record shows no facts, conditions, or circumstances known to Plaintiffs Schriek, Olguin, and Stagg such that a reasonable person would inquire into structural or other problems with the retaining wall system. The record does not establish whether there were discoverable injuries to the walls on Plaintiffs Schriek, Olguin, and Stagg's properties. As it stands, the evidence in the record demonstrates that only Plaintiff Fuller noticed problems with the wall on his property, but is silent as to whether the wall on others' property had similar issues.

**{47}** Defendant ECHO argues that Plaintiff Fuller's knowledge of injury to the wall can be imputed to his neighbors such that the discovery rule does not apply. But Defendant ECHO fails to cite to any authority for this proposition, and therefore we assume no such authority exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). Without some evidence in the record, we cannot say that Plaintiffs Schriek, Olguin, and Stagg should have inquired further into the state of the wall and that should have led to the discovery of the injury. *See Yurcic*, 2013-NMCA-039, ¶ 14 (stating that because there was no evidence to illustrate that the plaintiff should have been on inquiry notice for the discovery rule, the motion for summary judgment was legally insufficient); *see also City of Albuquerque*, 2009-NMCA-081, ¶ 7 ("On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party

---

review whether Defendant ECHO satisfied its burden under Rule 1-056(C) to present a prima facie case. *See Romero*, 2010-NMSC-035, ¶ 7. Because our review is the same for Plaintiffs Schriek, Olguin, and Stagg on the breach of contract, breach of implied warranty, and negligence claim, we include the Stagg Plaintiffs in this section despite their failure to preserve.

opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute.").

**{48}** Defendant ECHO failed to raise a presumption of fact or establish that Plaintiffs Schriek, Olguin, and Stagg acquired knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action. *See Romero,* 2010-NMSC-035, ¶ 10 (noting the requirement to establish, at a minimum, a presumption of fact for the purposes of moving for summary judgment). Therefore, we reverse the district court's grant of summary judgment on Plaintiffs Schriek, Olguin, and Stagg's claims against Defendant ECHO because there are disputed questions of material fact as to whether Plaintiffs' claims are barred by the statute of limitations at issue. *See Yurcic*, 2013-NMCA-039, ¶ 10.

**{49}** In conclusion, we affirm the district court's grant of summary judgement on Plaintiff Fuller's claims. However, we reverse the district court's grant of summary judgment on Plaintiffs Schriek, Olguin, and Stagg's claims because Defendant ECHO failed to establish a prima facie showing it was entitled to summary judgment. Having resolved Plaintiffs' appeal of summary judgment for Defendant ECHO, we now turn to the district court's grant of summary judgment for the Lasater Defendants.

## D.     The Lasater Defendants

**{50}** Plaintiffs Schriek, Olguin, and Fuller5 argue that the district court improperly granted summary judgment in favor of the Lasater Defendants based on the statute of limitations in Section 37-1-3 and Section 37-1-4. In addition to claims of breach of contract, breach of implied warranty, and negligence for the original building of the retaining wall system, Plaintiffs Schriek, Olguin, and Fuller also brought claims of negligence and breach of implied warranty against the Lasater Defendants for the installation of the French drain on Plaintiff Fuller's property.

**{51}** Plaintiffs make identical arguments here for the claims related to the retaining wall system and the French drain as they made when challenging the district court's grant of Defendant ECHO's motion for summary judgment. Plaintiffs argue that there were disputed questions of material fact as to when Plaintiffs became aware of defects in the retaining wall system and the French drain.

**{52}** Because the arguments on appeal and the underlying facts are identical for Plaintiffs' retaining wall system breach of contract, breach of implied warranty, and negligence claims against the Lasater Defendants as against Defendant ECHO, our analysis remains the same. We therefore affirm the district court's grant of summary judgment on Plaintiff Fuller's retaining wall system claims because he was barred by the

5The Lasater Defendants note in their answer brief, and Plaintiffs concede, that the Stagg Plaintiffs did not name them in their complaint filed on May 4, 2017. Therefore, our analysis here is inapplicable to the Stagg Plaintiffs because we will not address claims of error where the plaintiff did not bring suit against the defendant in district court, because no cause of action exists.

statute of limitations due to his admissions he was aware of issues with the retaining wall system in 2008. However, we reverse the district court's grant of summary judgment of Plaintiffs Schriek and Olguin's retaining wall breach of contract, breach of implied warranty, and negligence claims because the Lasater Defendants failed to make a prima facie showing that Plaintiffs Schriek and Olguin were aware of issues with the retaining wall system before its collapse in 2017.

{53}    For Plaintiffs' claims involving the Lasater Defendants' installation of the French drain, we affirm the grant of summary judgment on both Plaintiff Fuller's claims because he admitted he knew about defects in the French drain shortly after it was installed in 2009. But we reverse as to Plaintiffs Schriek and Olguin's breach of implied warranty and negligence claims involving the French drain because, again, the Lasater Defendants presented no evidence of discovery prior to the collapse in 2017, and therefore failed to make a prima facie case for summary judgment. We explain.

### i.    Plaintiff Fuller's French Drain Claims

{54}    The district court found, and Plaintiff Fuller does not dispute, that the French drain was installed in 2009 and deemed unsatisfactory in 2009. As a result, "Plaintiff Fuller removed the garden wall topping the retaining wall in 2011 or 2012 because of continuing issues." Plaintiff Fuller argues that there is a difference between the upper retaining wall and lower retaining wall and that his affidavits establish that he had no knowledge of issues with the lower retaining wall.

{55}    We find Plaintiff Fuller's argument unpersuasive. Merely asserting a difference between the sections of the retaining wall system is insufficient for Plaintiff Fuller to meet his burden in order to invoke the discovery rule. Further, the retaining wall system is irrelevant to Plaintiff Fuller's knowledge of issues with the French drain. As Plaintiff Fuller stated in his first affidavit, the Lasater Defendants "did not include any material to filter soil from clogging, or otherwise accumulate in, the drain" and as a result the French drain failed to stabilize the retaining wall system when it was installed in 2009.

{56}    Because the Lasater Defendants made a prima facie showing that Plaintiff Fuller was aware of problems with the French drain in 2009 by citing his own affidavit, it was Plaintiff Fuller's burden to demonstrate that if he had diligently investigated the problem he would have been unable to discover the facts underlying the claim. *See Butler*, 2006-NMCA-084, ¶ 28. Plaintiff Fuller was unable to do so. Therefore, we affirm the district court's grant of summary judgement for the Lasater Defendants on both Plaintiff Fuller's French drain claims.

### ii.    Plaintiffs Schriek and Olguin's French Drain Claims

{57}    Finally, Plaintiffs Schriek and Olguin assert that the Lasater Defendants failed to make a prima facie case that they were entitled to summary judgment on their breach of implied warranty and negligence claims for the French drain. The Lasater Defendants maintain the same argument that we may impute Plaintiff Fuller's knowledge onto

Plaintiffs Schriek and Olguin. For similar reasons as to those stated above, we agree with Plaintiffs that the district court erred in granting summary judgment on these claims.

**{58}**     The Lasater Defendants failed to produce evidence specific to Plaintiffs Schriek and Olguin. In fact, the Lasater Defendants failed to assert any fact regarding Plaintiffs Schriek and Olguin on appeal, and our review of the record shows that the only facts asserted is that the home Defendant Lasater built and sold to Plaintiff Fuller shared a property line with Plaintiff Schriek's home. The Lasater Defendants argue that Plaintiffs had a duty to maintain their property and use reasonable diligence in caring for their property. Although the Lasater Defendants cite to *Ford v. Bd. of County Com'rs of County of Dona Ana*, 1994-NMSC-077, 118 N.M. 134, 879 P.2d 766, and UJI 13-1318 NMRA in support, these authorities discuss the inapplicable duty of care a property owner owes to a visitor to the premises. *See Ford*, 1994-NMSC-077, ¶ 12. As such, we find this argument unpersuasive in the context of establishing a prima facie showing that a defendant is entitled to summary judgment based on notice.

**{59}**     We again cannot say, solely based on the fact that Plaintiff Fuller knew of issues with the French drain, that the other Plaintiffs should have inquired and discovered the issues themselves. Thus, the Lasater Defendants failed to make a prima facie showing they were entitled to summary judgment on Plaintiffs Schriek and Olguin's breach of implied warranty and negligence claims. *See Yurcic*, 2013-NMCA-039, ¶ 30 ("Because [d]efendants failed to make the requisite prima facie case, [p]laintiff bore no obligation to produce evidence to the contrary."). Therefore, we reverse the district court's grant of summary judgment on Plaintiffs Schriek and Olguin's French drain claims against the Lasater Defendants.

**{60}**     In conclusion, we affirm the district court's grant of summary judgement on all of Plaintiff Fuller's retaining wall system and French drain claims. But we reverse the district court's grant of summary judgment on Plaintiffs Schriek and Olguin's retaining wall system and French drain claims.

**{61}**     In summary of Plaintiffs' appeal of the three district court summary judgment orders, we reverse only on Plaintiffs Schriek, Olguin, and Stagg's breach of contract, breach of implied warranty, and negligence claims against Defendant ECHO, and on all of Plaintiffs Schriek and Olguin's retaining wall system and French drain claims against the Lasater Defendants. We affirm the district court on all other claims.

## II.     MOTIONS TO RECONSIDER

**{62}**     Having resolved the summary judgment arguments on appeal, we now turn to Plaintiffs Schriek, Olguin, and Fuller's arguments that the district court erred in denying their motions for reconsideration because they demonstrated genuine issues of material fact.6 Because we determined that the district court erred in granting summary judgment

---

6The motions to reconsider were only filed on behalf of Plaintiffs Schriek, Olguin, and Fuller, and therefore we will not address any argument for reconsideration for the Stagg Plaintiffs, as those arguments were not preserved below. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-

on Plaintiffs Schriek, Olguin, and Stagg's breach of contract, breach of implied warranty, and negligence claims against Defendant ECHO and Plaintiffs Schriek and Olguin's breach of contract, breach of implied warranties, and negligence claims against the Lasater Defendants, we do not address whether the district court properly denied the motion for reconsideration for these claims. Plaintiffs Schriek, Olguin, and Fuller argue that the district court abused its discretion because they raised genuine issues of material fact such that summary judgment was improper for all claims.[7] "We review the denial of a motion for reconsideration for abuse of discretion." *Unified Contractor, Inc., v. Albuquerque Hous. Auth.*, 2017-NMCA-060, ¶ 77, 400 P.3d 290. "This Court has held that a district court does not abuse its discretion in denying a motion for reconsideration that was merely a restatement of the arguments [the plaintiffs] had already advanced." *Id.* (internal quotations marks and citation omitted).

**{63}** Plaintiffs argued at the district court that there was a genuine issue of material fact when the retaining wall system was used by Plaintiffs for the statute of repose and Plaintiff Fuller's second affidavit clarified that he had no knowledge of issues with the retaining wall system or French drain. But Plaintiffs had already raised these arguments in their responses to Defendants' motions for summary judgment. Therefore, the district court did not abuse its discretion in refusing to reconsider these issues. *See id.* ¶ 78.

**{64}** Plaintiffs Schriek, Olguin, and Fuller additionally argue they were given insufficient time to file objections because the order submitted by the Lasater Defendants and signed by the district court exceeded the scope of the reasoning in the district court's letter explaining its grant of summary judgment. We disagree. The order reflects the district court's letter decision which stated that each claim was barred by the applicable statutes of limitations. Plaintiffs admit that they did in fact present their objections to the district court's orders granting summary judgment in their motions for reconsideration during the hearing on the motion, and that, instead of following the district court's directive to file a separate motion detailing their specific objections, Plaintiffs filed a notice of appeal instead. Therefore, we hold the district court did not abuse its discretion when denying Plaintiffs Schriek, Olguin, and Fuller's motions for reconsideration.

## CONCLUSION

**{65}** We affirm in part and reverse in part, and remand for further proceedings consistent with this opinion.

**{66}** **IT IS SO ORDERED.**

---

022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue.").

[7] We note here this Court's frustrations with this argument because Plaintiffs failed to provide citations to the record or explanations on appeal. We will not search the record to find the alleged error Plaintiffs complain of. *See Crutchfield*, 2005-NMCA-022, ¶ 14.

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**MICHAEL D. BUSTAMANTE, Judge,**
**retired, Sitting by designation.**